LEO A. GOODRICH, BY HIS GUARDIAN, &c., v. THOMAS CORT, INCORPORATED.

Argued June 9, 1910—Decided November 5, 1910.

1. The duty imposed upon a master by section 13 of the so-called Factory act (*Pamph. L.* 1904, *p.* 152, § 13), which provides that "whenever practicable * * * machinery of every description shall be properly guarded," is to guard against what can be reasonably anticipated, and it does not require of the employer that he guard against possibilities that cannot be reasonably foreseen.

2. It appeared that the plaintiff was entirely familiar with the operation of a machine upon which he was injured, and appreciated the danger which lurked in it, having testified "anybody that looks at the machine could see it all. Work on it once and you know it all," and that he had knowledge that a guard had never been placed upon the machine at any time although there was such guard in the factory which had never been used. *Held*, by continuing in the employment with knowledge of the above facts, the plaintiff must be held to have assumed the risk arising from the defendant's failure to guard the machine.

3. An instruction to the jury that "A risk to be obvious must be appreciated by the person who sees it," given in a case of personal injury to a lad of seventeen years while working in defendant's factory and of some experience therein—*Held*, to be erroneous inasmuch as it excludes a case where a reasonably prudent boy of the plaintiff's age and experience would in the exercise of reasonable care have comprehended the danger.

4. In a suit to recover damages for personal injuries, the following instruction was given: "You and I will agree that we want our whole hand; we do not want a finger taken off; we do not want a finger mutilated; but just how much the mutilation of that finger or that hand is going to deprive us from making a livelihood it is hard to tell. It will always be an obstacle; always be a detriment; always be a disfigurement; and we should be awarded something for it, but we should be awarded what we think is fair compensation." *Held* error, because it allowed the

jury to substitute for compensation an amount which they might think they would be willing to have awarded to them for a similar injury, or an amount which the jury might believe the injured party might think was fair compensation.

On error to the Supreme Court.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the plaintiff in error, *Lindabury, Depue & Faulks.*

For the defendant in error, *William F. Delaney* and *Bartholomew B. Coyne* (of the New York bar).

The opinion of the court was delivered by

VOORHEES, J. This is a writ of error to the Circuit Court of Essex county, removing a judgment rendered for the plaintiff on the verdict of a jury. The plaintiff was a lad of seventeen years at the time of the occurrence of the accident, on the 7th of October, 1905, and was employed by the defendant company in a shoe manufacturing establishment in Newark as a heel builder, and had been for about three months before that date operating a heel press machine for doing that work. The room where the plaintiff worked was large, having an aisle running through it, with machines on either side. There was a machine, known as a skiving machine, upon which the plaintiff suffered his injury, which stood next to and within six inches of the heel press, and so located that when the plaintiff was at work on the heel press he faced the back of the skiving machine. The latter machine consisted of two rollers, one above the other, back of which and behind the space where the rollers meet was a knife about the length of each roller. The rollers revolved toward the knife by power applied by a belt. The lower roller is corrugated and called the feed roll. Behind this skiving machine there was a wooden box two and one-half feet high and about three and one-half feet square, which caught the leather shavings made by this machine.

On the night before the accident, the plaintiff had placed a leather pattern on the above box, and about eight o'clock of the morning of the accident plaintiff entered the room and looked for the pattern on the box, but could not find it. Believing it had fallen into the box, he leaned over the box, standing about two feet behind it, and in so doing his foot slipped, he fell forward, and to regain his equilibrium he threw up his left hand, which, striking the gauge wheel of the skiving machine, turned it and was caught between the two rolls, which were in motion at that time, though the machine was not then in use. His hand was drawn in between the rollers in front and was injured by the knife, necessitating the amputation of the little finger and injury to other parts of the hand, whereby it has become permanently practically useless.

The gist of the action is failure properly to guard the machine as required by the so-called Factory act (*Pamph. L.* 1904, *p.* 152, § 13), which provides that "whenever practicable * * * machinery of every description shall be properly guarded."

There was a place to fasten a guard roller in front of the rollers of the skiving machine, and such a roller was in the factory but had never been on the machine.

It was not asserted that the plaintiff slipped on account of any negligent act of the defendant. The ground of recovery is placed entirely upon the above section of the Factory act. The duty which this act imposes upon a master is to guard against what can reasonably be anticipated, and it does not require of the employer that he guard against possibilities that cannot be reasonably foreseen.

That the master should have foreseen that the plaintiff would have, by slipping, fallen into this box, which formed a guard in the rear of the machine, and in so doing have placed his hands in contact with the rollers from the front of the machine, the opposite side of it from where he was standing at the time of the slipping, is perhaps a proposition refuted by the simple rehearsing of the facts. Therefore, on that ground, the motion to nonsuit should have prevailed.

But it is clear from the testimony that the plaintiff, who had been employed in the factory in various capacities for about three years, although he had been performing the special duties in which he was engaged at the time of the accident only for about three months, was entirely familiar with the operation of the skiving machine, having operated it himself at times, and his clear description of it, at the trial, and of its workings, enforces this conclusion.

He also appreciated the danger which lurked in this machine, for he says that he learned all about the machine by working on it, not from anything that was told to him, and testified: "There was no information. Anybody that looks at the machine could see it all. Work on it once and you know it all."

He, furthermore, had knowledge that a guard had never been placed upon the machine at any time, although there was a guard roller in the factory, designed for this machine, but which had never been put in use, a fact also known to him. It was held in *Mika* v. *Passaic Print Works,* 47 *Vroom* 561, by the Court of Errors and Appeals, that the above section of the Factory act did not abolish the common law principle of assumption of risk. By continuing in the employment with knowledge of the above facts, the plaintiff must be held to have assumed the risk arising from the defendant's failure to guard the machine, and it was therefore error in the trial court to refuse to take the case from the jury.

Several exceptions were taken to the charge. Among the propositions of law presented in it, to the jury, was the following: "A risk to be obvious must be appreciated by the person who sees it." This instruction excludes a case where a reasonably prudent boy, of the plaintiff's age and experience, would in the exercise of reasonable care, have comprehended the danger. It was therefore error, for it permitted a recovery, if in fact he did not appreciate the danger, if he ought reasonably to have done so.

The court charged the jury as follows on the subject of damages: "You and I will agree that we want our whole hand; we do not want a finger taken off; we do not want a

finger mutilated; but just how much the mutilation of that finger or that hand is going to deprive us from making a livelihood, it is hard to tell. It will always be an obstacle; always be a detriment; always be a disfigurement; and we should be awarded something for it, but we should be awarded what we think is fair compensation."

This allowed the jury to substitute for compensation which was the legal measure of the plaintiff's loss, an amount which they might think they would be willing to have awarded to them for a similar injury, or an amount which the jury might believe the injured party might think was fair compensation.

The question whether if the guard roller had been in use, it would have prevented the accident, arose during the trial. To present it, the defendant requested the court to charge, "If a guard to the rollers would not have prevented the accident from happening, the plaintiff cannot recover." The request was not granted, but the court added, "I charge that, with this modification, if you think he did not comprehend the danger, and was not instructed, then he could recover."

The modification entirely nullified this clearly proper request, and allowed the jury to believe that although a guarding of the machine would not have prevented the accident, yet the lack of comprehension of the danger and of instruction would have been sufficient to base a recovery on, and it as well perpetuated the error contained in the charge above referred to as to obvious risk. For the errors pointed out the judgment will be reversed, to the end that a *venire de novo* issue.